**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3465
_____

UNITED STATES OF AMERICA

v.

ERNEST FENNELL, JR.,
                                        Appellant
_____

On Appeal from the United States District Court
For the District of Delaware
(D.C. No. 1-22-cr-053-001)
District Judge:  Honorable Colm F. Connolly
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 31, 2023

Before:  JORDAN, ROTH, and AMBRO, *Circuit Judges*

(Filed: February 7, 2024)
_____

OPINION*
_____

---

    * This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

**JORDAN**, *Circuit Judge*.

Ernest Fennell, Jr. challenges his sentence, arguing that the District Court should not have applied an enhancement under § 2K2.1(b)(6)(B) of the United States Sentencing Guidelines ("guidelines") for his possession of a firearm in connection with another felony – namely, aggravated menacing under 11 Del. Code § 602(b). Because the District Court did not clearly err in deciding that Fennell's actions satisfied the elements for aggravated menacing, we will affirm.

## I.   BACKGROUND[1]

On March 20, 2022, Fennell went to a hookah lounge in Wilmington, Delaware. After taking some "ecstasy" pills[2] and having some drinks, he "blacked out" in the lounge. (Opening Br. at 4.) He had arrived with a friend, but the friend left, so Fennell found himself alone and without a ride home. At some point, he left the lounge and was not permitted to reenter because it prohibited reentry after 1:00 a.m. He asked the lounge's security guard if he could charge his phone, as he had no way to get home. The

---

[1] This factual background is drawn from the undisputed facts outlined in the Presentence Investigation Report that were related at sentencing and adopted by the District Court.

[2] The exact nature of the pills Fennell took is not clear from the record, but they are referred to as ecstasy pills in the briefing and the Presentence Investigation Report.

guard charged Fennell's phone for ten minutes, returned it to him, and then Fennell walked away.

As the lounge was closing, patrons who were leaving complained to the security guard that someone in the parking lot was trying to get a ride and was pulling on car door handles. In the parking lot, the security guard confronted Fennell in what the guard described as a verbal altercation. As the guard approached, Fennell pulled a gun out from his jeans and told the guard to back up and that his issue was not with him. When Fennell flashed the gun the security guard stopped, stepped back, told Fennell not to worry about it and wished him a good night, and then got into his car. Sometime later that night, the security guard flagged down a Wilmington police car patrolling the area and reported the incident. Police officers later arrested Fennell at a nearby hotel where he was knocking on the doors of hotel rooms. During a search incident to the arrest, the officers found a holstered handgun in Fennell's waistband.

The government charged Fennell with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). He pled guilty pursuant to a plea agreement.

The initial draft of Fennell's Presentence Investigation Report ("PSR") recommended a sentence within the guidelines range of 33 to 41 months. The government objected to the draft PSR, arguing that an additional four-level enhancement should be applied under U.S.S.G. § 2K2.1(b)(6)(B) because Fennell used or possessed a firearm in connection with another felony offense when he "put a person in fear of

3

imminent physical injury by displaying a firearm[,]" in violation of 11 Del. Code

§ 602(b). Fennell objected to the enhancement, contending that the government had no

evidence that the security guard was in actual, subjective fear of imminent physical

injury. The probation office applied the enhancement and adjusted the recommended

guidelines range upward to 51 to 63 months. Fennell continued to oppose the

enhancement in his sentencing memorandum and at his sentencing hearing. The District

Court overruled his objection, adopted the PSR's recommendation on the guidelines

range, and imposed a bottom-of-the-range sentence of 51-months' imprisonment,

followed by three years of supervised release. This timely appeal followed.

## II.    DISCUSSION[3]

Fennell argues that the District Court erred in applying the § 2K2.1(b)(6)(B)

enhancement because the government did not prove that he used a firearm in connection

with "another felony offense." The government responds that Fennell's conduct

constituted aggravated menacing under 11 Del. Code § 602(b), which requires that the

victim be placed "in fear of imminent physical injury." As Fennell sees it, however, the

evidence presented was insufficient to show that the security guard was in actual,

subjective fear of imminent physically injury. The District Court saw it differently, and

so do we.

---

[3] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). "[W]e review the District Court's interpretation of the Sentencing Guidelines de novo," "findings of fact for clear error[,]" and "application of the [g]uidelines to facts for abuse of discretion." *United States v. Kluger*, 722 F.3d 549, 555 (3d Cir. 2013) (citations omitted).

4

"The government bears the burden of proving by a preponderance of the evidence that a sentencing enhancement applies," *United States v. Napolitan*, 762 F.3d 297, 309 (3d Cir. 2014), and the evidence used at sentencing is "subject to a due process standard of reliability[,]" *United States v. Paulino*, 996 F.2d 1541, 1547 (3d Cir. 1993).

Section 2K2.1(b)(6)(B) provides, in relevant part, that an enhancement is appropriate "[i]f the defendant … used or possessed any firearm … in connection with another felony offense[.]" U.S.S.G. § 2K2.1(b)(6)(B).  In determining whether the enhancement applies, sentencing courts can consider relevant and reliable "information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3.  The District Court applied the enhancement after finding that Fennell used his firearm in connection with "another felony offense," in this case, the aggravated menacing forbidden by 11 Del. Code § 602(b).

Under Delaware law, a person "is guilty of aggravated menacing when by displaying what appears to be a deadly weapon that person intentionally places another person in fear of imminent physical injury." *Id.*  The offense requires that the victim subjectively perceive an imminent threat of physical injury.  *See Hastings v. State*, 289 A.3d 1264, 1271 (Del. 2023) (explaining that aggravated menacing "focuses on the victim's perception of the threat rather than on the actual risk of danger") (internal quotation marks omitted).  But, contrary to Fennell's argument, the victim need not testify to his perception of the threat.  It is well-settled that a finding of fear can be based

5

on the victim's reaction alone. *See Thomas v. State*, 138 A.3d 1151, 2016 WL 39213460, at *2 (Del. June 1, 2016) (TABLE) ("[T]he evidence [of the victim's reaction only], including all reasonable inferences, was sufficient as a matter of law to establish all of the elements of Aggravated Menacing[.]"); *Cuff v. State*, 792 A.2d 188, 2022 WL 384438, at *1 (Del. Mar. 7, 2022) (TABLE) (analyzing victim's reaction); *State v. Carter*, 2017 WL 237621, at *8 (Del. Super. Ct. Jan. 18, 2017), *aff'd*, 175 A.3d 620 (Del. Nov. 15, 2017) (upholding aggravated menacing conviction where prosecution relied on "circumstantial evidence," victim's 911 call, and testimony that victim was "excited and agitated" when officer arrived).

The District Court found by a preponderance of the evidence that the security guard was indeed in fear of an imminent threat. Fennell argues that the District Court erred because it applied an objective standard, "reasoning that 'common sense' dictated that the security guard must have been in imminent fear," rather than determining that the security guard was, subjectively, in fear of imminent physical injury. (Opening Br. at 8, 14.) We disagree.

While the District Court did state that "common sense suggests" that one who found himself in the security guard's position would be in fear of imminent physical injury, and the Court went on to comment, "that alone is why [it was] going to overrule the objection," (J.A. at 114,) that was not all it said. It also adopted the undisputed facts from the PSR, including that, upon Fennell's flashing of the firearm, the security guard stopped, stepped back, told Fennell not to worry about it and wished him a good night,

6

and then got into his car. And, at sentencing, the District Court reiterated specific, undisputed facts about the security guard's reaction, including that the guard "backed away" and "contact[ed] authorities." (J.A. at 114.) The Court found that the security guard's statements were "consistent with somebody who felt that they were at that point susceptible to being shot. Which again, common sense suggests … would be in fear of imminent physical injury." (J.A. at 114.) Those facts support the conclusion that the security guard himself was in fear of imminent physical injury. *Cf. Cuff*, 2002 WL 384438, at *1 (affirming a conviction for Aggravated Menacing based on evidence that the defendant "displayed a gun to [the victim] during a confrontation, [the victim] immediately retreated from the area," and the victim reported the incident to the authorities). Therefore, a full review of the District Court's statements indicates that it considered the specific facts concerning the security guard's reaction in deciding that he had a subjective fear of imminent physical injury. And we discern no clear error in the Court's conclusion.

Fennell also argues that the District Court made inconsistent factual findings. He says that the Court concluded he "made movements to suggest [he] could shoot [the security guard]," but it also stated that he did not point his gun at the guard. (Opening Br. at 14 (quoting J.A. 114).) We disagree with Fennell's assertion that those statements are inconsistent. Pointing a gun at someone is not the only movement that suggests a shooting may occur. *See Cuff, 2002 WL 384438* at *1 (Defendant reaching toward his pants and telling victim, "Dog, if I reach down here, you won't like what I pull up" was

sufficient evidence for the victim to believe defendant had a handgun that could be used to shoot him).  The District Court accepted that, as recounted in the PSR, Fennell flashed his gun at the security guard.  Those movements are consistent with the District Court's conclusion that Fennell was suggesting he could have shot the security guard.

Finally, Fennell argues that the District Court applied the enhancement "despite recognizing that the security guard's response was not immediate."  (Opening Br. at 19.) We reject Fennell's premise that the application of the enhancement was inappropriate because the guard did not immediately report the incident to authorities.  We see no reason why – and Fennell has not cited any law to support his argument that – the immediacy of a victim's contact with law enforcement dictates whether the victim was in fear of imminent harm at the time of the menacing conduct.  Instead, taken together, the undisputed facts concerning the security guard's response to Fennell's display of a firearm, including that the guard immediately stopped and backed away and then affirmatively flagged down the police car when he had the opportunity, support the District Court's finding that he had been in fear of imminent harm.  *See Lewis v. State*, 869 A.2d 327, 2004 WL 3220296, at \*1-2 (Del. Feb. 2, 2005) (TABLE) (holding that a victim's fear could be inferred from the totality of a victim's reaction to the defendant's conduct).

Fennell has not pointed to anything in the record disputing the accuracy of the findings described above, nor has he brought forth evidence leaving us "with the definite and firm conviction that a mistake has been committed."  *United States v. Grier*, 475 F.3d

556, 570 (3d Cir. 2007). We therefore conclude that the District Court's factual findings concerning the security guard's subjective fear were not clearly erroneous and there was no error when it applied § 2K2.1(b)(6)(B) to enhance Fennell's sentence.

## III. CONCLUSION

For the foregoing reasons, we will affirm the judgment of the District Court.